NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLIFFORD J. CHURCH, *individually and on behalf of those similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, *et al.*,<br><br>Defendants. | Civil Action No.: 20-10538<br><br>OPINION |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court on the motion of defendants Midland Funding, LLC and Midland Management, Inc. (collectively "Defendants") (ECF No. 13) to dismiss the first amended complaint (ECF No. 9) of plaintiff Clifford J. Church ("Plaintiff" or "Church"), individually and on behalf of all others similarly situated. In the alternative, Defendants move to compel arbitration. Plaintiff opposed the motion (ECF No. 19) and Defendants replied in support (ECF No. 24). Pursuant to Rule 78(b) of the Federal Rules of Civil Procedure, this matter is decided without oral argument. For reasons set forth below, defendants' motion to dismiss is denied; defendants' motion to compel arbitration is granted.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

In October 2016, Plaintiff opened a Pier 1 Imports credit card account, issued and owned by Comenity Bank (ECF No. 13-2 at 1), which he used to purchase goods and merchandise from Pier 1. ECF No. 9 at 3. Terms and conditions of the account agreement included an arbitration

provision which stated, in relevant part,

> "You have the right to reject this Arbitration Provision. If you do not reject this Arbitration Provision, it will be part of this agreement and will eliminate your right to a trial by jury; and substantially affect your rights including your right to bring, join in or participate in class proceedings." ECF 6-5 at 7.

Prior to acceding to the terms and conditions of the account agreement by using his Pier I Imports credit card account, Plaintiff did not reject or respond to the arbitration provision. ECF No. 13-2 at 9. On March 8, 2019, Plaintiff received notice that his account was closed and charged-off, and that Comenity had sold the account to defendant Midland Credit Management, Inc. for collection. ECF No. 6-4 at 27.

Defendants assert that Plaintiff has an outstanding balance on the Pier 1 account, ECF No. 9 at 3, and, on July 3, 2019, mailed a collection letter to Plaintiff. Id. at 4. The letter stated, in relevant part, "If your account goes to an attorney, the flexible pay options . . . may no longer be available to you. If this process results in litigation, and a judgment is entered against you, the judgment will be enforceable according to state law." Id. at 5.

On July 31, 2019 Plaintiff filed a Chapter 7 bankruptcy petition ("petition") in the United States Bankruptcy Court for the District of New Jersey, Case No. 19-24892-JKS ("Bankruptcy Proceeding"). In the petition, Plaintiff identified a number of potential claims as part of the bankruptcy estate including, most relevantly,

> "Unfiled potential Fair Debt Collection Practices Act claims/cases vs. debt collector(s) to be determined and John Does 1-25. Unliquidated, estimated damages: $1,000 statutory damages actual damages are unknown, possible service award. See 15 U.S.C. 1692k." ECF No. 13-2 at 4.

In the initial complaint, filed July 3, 2020,[1] as well as in the amended complaint, Plaintiff alleges that defendants "continue to offer flexible payment options for accounts even after they are sent to attorneys or after lawsuits have been filed." ECF No. 9 at 5. Therefore, Plaintiff alleges that defendants deprived him "and other New Jersey consumers of truthful, non-misleading, information" with regard to debt collection, thereby engaging in practices violative of the Fair Debt Collection Practices Act (hereafter "FDCPA"). Id. at 5-6.

In response to Plaintiff's FDCPA claims, Defendants contend that the bankruptcy trustee is the only party with proper standing to assert an FDCPA claim. Defendants assert that once Plaintiff filed his bankruptcy petition, he abandoned his FDCPA claim, which then "transferred to the bankruptcy Estate and titled to the Chapter 7 trustee, unless and until they were abandoned back to him by the trustee . . ." thus causing Plaintiff to lose standing. Defendants further argue that as "the potential suit against Defendants was not adequately disclosed in Plaintiff's Bankruptcy Petition, the claim was not abandoned back to the Plaintiff, by Court Order or specifically by the trustee. Thus it remains property of Plaintiff's Estate and a cause of action that only the trustee can pursue." ECF No. 13-2 at 17. See also ECF No. 24 at 3; ECF No. 19 at 5; ECF No. 6-3 at 69. Defendants also contend that the FDCPA claim is barred by judicial estoppel; alternatively, defendants assert that Plaintiff's FDCPA claims must be submitted to arbitration per the aforementioned arbitration provision within the account agreement.

---

[1] On July 3, 2020, Plaintiff filed a putative class action complaint and jury demand against defendants in the Superior Court of New Jersey, Law Division, Bergen County (docket number BER-L-003864-20). On August 14, 2020, defendants successfully removed the state court action to this Court based on federal question jurisdiction grounds. ECF No. 13-2 at 9. Plaintiff filed a first amended complaint (ECF No. 9) on October 9, 2020.

### III.  DISCUSSION

#### A.  12(b)(1) Standing and Judicial Estoppel

Defendants' arguments as to standing and judicial estoppel based on Plaintiff's bankruptcy are unpersuasive.  The parties agree that Plaintiff listed an FDCPA claim in his bankruptcy estate and that a potential legal claim can be abandoned by an estate upon closure of a bankruptcy action. ECF No. 19 at 5; ECF No. 24 at 3 n.3. Defendants' main argument against Plaintiff's FDCPA claim being abandoned by the bankruptcy estate is that the claim was never properly scheduled in the first place. That argument, however, is belied by the bankruptcy docket which contains a letter from the bankruptcy trustee specifically agreeing to abandon FDCPA claims and a "Certification of No Objection" to abandonment of Plaintiff's FDCPA claims. *See In re Church*, 19-24862, ECF Nos. 17 and 28. Accordingly, as Plaintiff's FDCPA claims were voluntarily abandoned by the bankruptcy estate without objection, Defendant's motion to dismiss due to lack of standing or judicial estoppel must be denied as both arguments rely entirely on the bankruptcy estate being the proper owner of these claims.

#### B.  Motion to Compel Arbitration

The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause . . . .'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted).  Conversely, the Rule 56 standard will apply "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration

agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (internal citations omitted).

  Here, there is no real dispute that the account agreement contained an arbitration provision to which Plaintiff acceded, despite Plaintiff's arguments to the contrary. ECF No. 19 at 21. While Plaintiff contends that the existence "of an enforceable agreement between the parties cannot be determined with the requisite clarity," (id.), Plaintiff makes specific reference to the account agreement that contains the arbitration agreement in his amended complaint. *See* ECF No. 9 at 4. Indeed, the account agreement itself is the very basis for Plaintiff's FDCPA claim. The Court further notes that Plaintiff's challenges to arbitrability are legal, rather than factual, making 12(b)(6) review the proper standard. *See Fisher v. Trans Union, LLC.*, No. 19-679, 2019 WL 2248696, at *2 (E.D. Pa. May 23, 2019) (applying 12(b)(6) standard to challenge as Plaintiff asserted "a legal, rather than factual, challenge to arbitrability.").

  Having determined that the Motion should be reviewed under Rule 12(b)(6),[2] the Court must engage in the two-step analysis outlined by the Third Circuit and determine whether there is a valid agreement to arbitrate, and if there is, whether Plaintiff's claim falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220.

---

[2] Even if the Court were to review arbitration under the Rule 56 standard, however, the outcome would likely be the same as Defendants have provided documentation showing that all rights associated with the account agreement were transferred to them. *See* ECF No. 13-4 at ¶ 13 and ECF No. 13-5 at ¶¶ 13-14 (Defendants' certifications attesting that "all rights, title and interest in the account were sold and assigned to MCM."). Additionally, the account agreement itself explicitly notified Plaintiff that "[w]e may transfer or assign your Account and/or this Agreement, or any of our rights under this Agreement, to another person or entity at any time without prior notice to you or your consent." ECF No. 13-4 at 10. Plaintiff's argument that limited discovery is required on the issue of arbitrability is vague and unsupported by any requests for specific information or documentation that is needed on this issue.

The Court finds the arbitration provision is valid and enforceable, and finds no support for Plaintiff's contention that the agreement to arbitrate did not transfer to Defendants following the sale of the account from Comenity to Defendants. The account agreement substantially details the arbitration agreement, including arbitration processes and categories of disputes subject to arbitration. See 13-4 at 6; 13-5 at 7. Moreover, Plaintiff assented to the terms of the provision by using his Pier 1 Imports credit card account, despite being provided with instructions to opt-out or reject the provision. ECF No. 13-2 at 27. Having found that an agreement to arbitrate exists between the parties, the Court must next determine if Plaintiff's claims fall within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220.

An order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. CWA*, 475 U.S. 643,650 (1986). The arbitration provision, as contained in the account agreement, defines "claim" as "any claim, dispute, or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any card, any rewards program, and/or any prior agreement or account." ECF 13-5 at 14. It is clear to this Court that Plaintiff's FDCPA claim relates to defendants' collection letter and to the agreement Plaintiff acceded to in relation to his Pier 1 credit card; it therefore falls within the domain of the arbitration provision.

## IV.   **CONCLUSION**

For the reasons stated above, the motion to dismiss is **DENIED** and the motion to compel arbitration is **GRANTED.** An appropriate Order accompanies this Opinion.

**DATE:** May 25, 2021

**CLAIRE C. CECCHI, U.S.D.J.**

6