<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLIFFORD J. CHURCH, *individually and on behalf of those similarly situated*,<br><br>            Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and JOHN DOES 1 to 10,<br><br>            Defendants. | Case No. 20cv10538 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Clifford J. Church alleges Defendants Midland Funding, LLC and Midland Credit Management, Inc. violated the Fair Debt Collection Practices Act when Defendants sent Plaintiff a collection letter pertaining to his consumer debt. Plaintiff now moves to vacate an arbitration award, arguing that this case was never arbitrable, or in the alternative, that deficiencies throughout arbitration warrant vacatur. Defendants oppose. The Court decides this motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78(b). For the reasons below, Plaintiff's motion will be **DENIED**.

I.     **BACKGROUND**[1]

    **A. Pre-Arbitration**

In October 2016, Plaintiff opened a Pier 1 Imports credit card account ("Pier 1 Account"), issued and owned by Comenity Bank. D.E. 35 ("Prior Op.") at 1. The account agreement included an arbitration provision:

> You have the right to reject this Arbitration Provision. If you do not reject this Arbitration Provision, it will be part of this agreement and will eliminate your right to a trial by jury; and substantially affect your rights including your right to bring, join in or participate in class proceedings.

*Id.* at 2. Plaintiff did not respond to or reject the arbitration provision. *Id.*

On March 8, 2019, Plaintiff received notice that his Pier 1 Account was closed, charged-off, and sold to Defendant Midland Credit Management, Inc. for collection. *Id.* On July 3, 2019, Defendants mailed a collection letter to Plaintiff regarding an outstanding balance on the Pier 1 Account. *Id.* The letter included the following at-issue language: "If your account goes to an attorney, the flexible pay options . . . may no longer be available to you. If this process results in litigation, and a judgment is entered against you, the judgment will be enforceable according to state law." *Id.*

Plaintiff filed his initial putative class action complaint on July 3, 2020, alleging that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692 *et seq.* ("FDCPA"). D.E. 1-2 ("Initial Compl.") at 4. Plaintiff alleged that Defendants violated the FDCPA "when attempting to collect consumer debts from consumers[] by falsely threatening that '[i]f your account goes to an attorney, the flexible options below *may* no longer be available to

---

[1] This section derives mainly from Judge Claire C. Cecchi's prior Opinion and the parties' briefings.

you.'" *Id.* at 5 (emphasis added) (quoting *id.* at 13 (containing a copy of the notice sent to Plaintiff)). Plaintiff claimed these threats were false because Defendants "continue to offer flexible payment options for accounts even after they are sent to attorneys or after lawsuits have been filed[]" and "never intended to make flexible payment options unavailable." *Id.* at 7. Defendants properly removed this case to federal court on August 14, 2020, pursuant to federal question jurisdiction. D.E. 1.

On October 9, 2020, Plaintiff filed an amended complaint, which asserted the same FDCPA claims relevant to this Opinion. D.E. 9 ("Am. Compl."). On October 27, 2020, Defendants moved to dismiss the amended complaint or in the alternative, compel arbitration pursuant to the arbitration provision in the account agreement. D.E. 13. Judge Claire C. Cecchi denied the Defendants' motion to dismiss, but granted the motion to compel arbitration. *See generally* Prior Op.

Judge Cecchi found that "despite Plaintiff's arguments to the contrary[,]" "there is no real dispute that the account agreement contained an arbitration provision to which Plaintiff acceded . . . ." *Id.* at 5. Accordingly, Judge Cecchi applied the Rule 12(b)(6) standard,[2] which required determining: (1) whether there is a valid agreement to arbitrate and (2) if so, whether Plaintiff's FDCPA claim falls within the scope of that agreement. *Id.* at 5 (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)). First, Judge Cecchi "f[ound] the arbitration provision is valid and enforceable" because "[t]he account agreement substantially details the arbitration [provision], including arbitration processes and categories of disputes subject to arbitration." *Id.* at 6. "Plaintiff

---

[2] The Rule 12(b)(6) standard, as opposed to the Rule 56 standard, is applied "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause . . . ." *Id.* (internal quotations omitted) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)).

3

assented to the terms of the provision by using his Pier 1 Imports credit card account[] . . . [and not] opt[ing]-out or reject[ing] the provision." *Id.*

Next, Judge Cecchi found that Plaintiff's FDCPA claim falls within the scope of that agreement because the arbitration provision defines a claim as, among other things: any claim between Plaintiff and Defendants that arises from or relates to the account agreement. *Id.* Because Plaintiff's FDCPA claim relates to the content of the collection letter he received and the applicability of the account agreement to him, it clearly met this definition. *Id.*

### B. The Arbitration Process

On August 11, 2021, Plaintiff filed an arbitration demand with JAMS.[3] *See* D.E. 45-1, Ex. A ("JAMS letter"). JAMS proposed five possible arbitrators, but the parties could not agree on one. D.E. 45-1 at 1 ("Opp'n Certif."). Each party submitted their respective "strike list" to JAMS, who then appointed the Honorable Helen E. Freedman, a retired judge, as arbitrator ("Arbitrator"). *Id.* Until this motion, Plaintiff never objected to the Arbitrator's qualifications or eligibility. *See, e.g.*, D.E. 45 at 7 ("Opp'n Br."). Plaintiff, who initiated the JAMS arbitration, also never objected to JAMS as the arbitration forum. *See id.* at 18; JAMS Letter.

On May 6, 2022, the Arbitrator issued her final decision. *See* D.E. 41-3 ("Arbitrator Op.") at 9, 11. Two findings are relevant here. First, the Arbitrator rejected the second iteration of Plaintiff's argument that the case is not arbitrable and decided to "abide by Judge Cecchi's well-reasoned decision in favor of arbitrability." Arbitrator Op. 4. Second, the Arbitrator dismissed Plaintiff's FDCPA claim. *See id.* at 9. In her analysis, the Arbitrator applied the "least sophisticated debtor" standard, which requires looking at alleged deceptive or misleading communications through the lens of the *least sophisticated* debtor, rather than a *reasonable* debtor.

---

[3] JAMS is an organization that provides arbitration for disputes through third-party neutrals.

*Id.* at 6.  Citing to the use of the word "may" in the collection letter, the Arbitrator found "may" was not a threatening word, unlike the words prior precedent has found threatening, such as "could" or "will."  *Id.* at 6-8.  Additionally, "the use of the word 'may' makes unpersuasive the argument that the statement was misleading."  *Id.* at 7.  Accordingly, the Arbitrator dismissed Plaintiff's FDCPA claim because "the language used in the [collection] letter [sent to Plaintiff] . . . was neither deceptive . . . nor can it be demonstrated to be untrue."  *Id.* at 9.

On September 7, 2022, Plaintiff moved to vacate the Arbitrator's Opinion.  D.E. 41 ("Mot.").

II.  ANALYSIS

    **A. Plaintiff Shows No Extraordinary Circumstances Warranting Relitigation of Judge Cecchi's Prior Decision on Arbitrability**

"Relitigation of issues previously determined in the same litigation . . . is controlled by principles of the law of the case doctrine . . . ."  *United States v. Ryes-Romero*, 959 F.3d 80, 93 (3d Cir. 2020) (emphasis removed) (quoting *Hull v. Freeman*, 991 F.2d 86, 90 (3d Cir. 1993)).  The "law of the case" doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Ragner Tech. Corp. v. Beradi*, 2817 F. Supp. 3d 541, 546 (D.N.J. 2018) (quoting *Christianson v. Colt Indus. Operating Corp.*, 488 U.S. 800, 815-16 (1988)).

Though a court "'has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . courts should be loath to do so in the absence of extraordinary circumstances . . . .'"  *Baran v. ASRC Fed., Mission Solutions*, 401 F. Supp. 3d 471, 481 (D.N.J. 2019) (quoting *Christianson*, 486 U.S. at 816)).  "Extraordinary circumstances" that would permit a court to revisit a prior decision are: "(1) new evidence is available; (2) a supervening new law has been announced; (3) the order clarifies or corrects an earlier, ambiguous ruling; and (4) where

5

a prior ruling, even if unambiguous, might lead to an unjust result." *Id.* at 481-82 (citing *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009)).

Again, Plaintiff argues non-arbitrability. First, Plaintiff requests this Court "determine whether the parties agreed to arbitrate" by "turn[ing] to ordinary state-law principles that govern the formation of contracts[.]" Mot. 9 (internal quotations omitted). Plaintiff then requests that this Court consider whether (1) "a valid agreement to arbitrate exists," and if so, (2) if this "particular dispute falls within the scope of that agreement[,]" and (3) his related arguments. *Id.* (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)); *see also* Mot. 9-12.

Judge Cecchi already decided this matter. *See generally* Prior Op. 4-6 (rejecting Plaintiff's arbitrability challenges). Though courts can revisit prior decisions, they are "loath to do so in the absence of extraordinary circumstances . . . ." *Baran*, 401 F. Supp. 3d at 481 (internal quotations omitted). Plaintiff does not argue, nor does the Court find, that any extraordinary circumstances exist. There is: (1) no new evidence available; (2) no supervening new law; (3) no correction of an (nonexistent) earlier, ambiguous ruling; and (4) no unjust results from a prior ruling. *See id.* at 481-82 (citing *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439). Judge Cecchi's prior decision that the case is arbitrable remains the law of the case.[4]

### B. The Arbitrator Was Not Unfit

In *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, the Third Circuit adopted the "constructive knowledge" approach to determine whether a party waives a claim against the fitness of the arbitrator when the party "fails to raise those concerns prior to or during the arbitration

---

[4] Plaintiff's argument asks the Court to reconsider Judge Cecchi's decision. Even a motion for reconsideration is "an extraordinary remedy" with similar criteria to those just discussed. *White v. City of Trenton*, 848 F. Supp. 2d 497, 500 (D.N.J. 2012) (internal quotations omitted). The Court is reluctant to "rethink what it ha[s] already thought through . . . ." *Id.* (internal quotations omitted).

hearings . . . ." 803 F.3d 144, 147 (3d Cir. 2015). Constructive knowledge "reasonably requires parties to 'exercise as much diligence and tenacity in ferreting out potential conflicts . . . in selecting the [arbitrator] as they do . . . once attacking the award became the sole reason to research the arbitrator[]." *Id.* at 148 (cleaned up). When a party is capable of "thoroughly and systematically digging for dirt" on the arbitrator, the party should do so "prior to being solely motivated by the chance of vacating the award." *Id.* (internal quotations omitted). The constructive knowledge approach encourages due diligence of the parties and "prevents the losing party from receiving a second bite at the apple." *Id.* (internal quotations omitted). "[C]onstructive knowledge of an issue suffices for the issue to be waived if there is a failure to raise it during arbitration." *Weber v. PNC Investments*, 844 Fed. App'x 579, 584 (3d Cir. Feb. 3, 2012).

Plaintiff asserts the Arbitrator's decision constituted the unauthorized practice of law. Mot. 14. The logic is as follows. Arbitration is the practice of law, and because the Arbitrator was not licensed in the state of New Jersey, she committed the unauthorized practice of law, and her decision must be disregarded. *Id.*

Regardless of the argument's merit,[5] Plaintiff has waived it, as he had constructive knowledge well before the arbitration. Constructive knowledge requires parties to exercise "diligence and tenacity in ferreting out potential conflicts" when selecting an arbitrator. *Goldman, Sachs & Co.*, 803 F.3d at 148. Here, Plaintiff could have reasonably discovered that the Arbitrator was not licensed in New Jersey. Indeed, Plaintiff's evidence-gathering efforts consisted of a search of the Arbitrator's name on the njcourts.gov website. *See* Mot. 14 n.2. Plaintiff knew the Arbitrator's name and has not explained why he could not have discovered her licensure earlier. Under the constructive knowledge standard, parties are not "permitted to game the system by

---

[5] Plaintiff cites no case law in support.

rolling the dice on whether to raise the challenge during the proceedings or wait until it loses to seek vacatur on the issue." *Goldman, Sachs & Co.*, 803 F.3d at 150.

Because Plaintiff had constructive knowledge and failed to raise any issue as to JAMS[6] or the Arbitrator until after he lost, his challenge is waived. *See id.* at 148 (holding that parties must "thoroughly and systematically dig[] for dirt" on the arbitrator "prior to being solely motivated by the chance of vacating the award").

### C. Vacatur of the Arbitration Award is Not Warranted

A district court "may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (internal quotations omitted). This "limited judicial review . . . maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Id.* (internal quotations omitted). The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), "enumerates four narrow grounds for vacating an [arbitration] award . . . ." *Simons v. Brown*, 2022 WL 296636, at *3 (3d Cir. 2022). These grounds are:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[6] Plaintiff does not expressly challenge JAMS as an arbitration venue. The Court notes that Plaintiff enlisted JAMS into the arbitration process. *See* JAMS Letter.

FAA § 10(a)(1)-(4).  Because Plaintiff only argues for vacatur under grounds (2)-(4), the Court will not address ground (1).

### 1. Plaintiff was provided a fair hearing

Under FAA § 10(a)(3), "an award can be vacated only if the arbitrator's error in excluding evidence was 'in bad faith or so gross as to amount to affirmative misconduct.'" *Simons*, 2022 WL 296636, at *3 (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).  The arbitrator's error must be more than just an error of law; it must be an error that "so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *Id.* (quoting *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016)).  A party is not deprived of a fair hearing if the arbitrator does not examine all extrinsic evidence. *Id.*  Rather, "[o]nly where the [relevant] writing is ambiguous may the factfinder examine all the relevant extrinsic evidence to determine the parties' mutual intent." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 605, 613 (3d Cir. 1995).

Plaintiff argues the Arbitrator deprived him of a fair hearing because he was denied the opportunity to conduct discovery. *See* Mot. 14-17.  Specifically, Plaintiff states that (1) "no discovery [w]as . . . conducted to show the relationship between Defendants and Pier 1" (*id.* at 15) and (2) JAMS Arbitration "brushed off the need for discovery" pertaining to "whether flexible payment options remain available to consumers despite Defendants' letter stating they will no longer be available once the account is referred to an attorney." D.E. 47 ("Reply Br.") at 12.

Arbitrators do not need to examine all extrinsic evidence when the relevant writing is unambiguous.  *Duquesne Light Co.*, 66 F.3d at 613.  Here, the relevant writing is unambiguous.  Despite Plaintiff's mischaracterization, the collection letter states that flexible payment options "may" no longer be available once the account is referred to an attorney—not that they "will."

9

Reply Br. 12.  Interpreting the collection letter's use of the word "may," the Arbitrator reasoned that Plaintiff "would have to put forth substantial evidence that [Defendants] *never* referred cases of this type to local collection attorneys, or that if referred, the attorneys always kept the same options opened, so that even using the vague term 'may' was misleading or deceptive." *Id.*  Given the unambiguous meaning of the word "may" in this context, the Arbitrator was not required to examine the extrinsic evidence Plaintiff claims he sought to provide.[7]  *Duquesne Light Co.*, 66 F.3d at 613.  Plaintiff additionally mischaracterizes the discovery issue regarding the relationship between Pier 1 and Defendants.  *See* Reply Br. 15.  The record certifies that "Comenity sold and assigned all rights, title and interest in the Account to MCM in or about March 2019 . . . ." *See* D.E. 13-4 at ¶13 ("Strickland Cert.").  Plaintiff does not explain what additional discovery he sought on this issue, or how it might change the analysis.

And even if the Arbitrator excluded any evidence in error, the award will only be vacated if this error was "in bad faith or so gross as to amount to affirmative misconduct."  *United Paperworks Int'l Union*, 484 U.S. at 40.  Plaintiff's right to discovery was not absolute.  The record contains a certification of the relationship between Pier 1 and Defendants.  Strickland Cert. ¶13.  The Arbitrator interpreted the collection letter's language and reasonably concluded that one instance contrary to Plaintiff's bright-line position would defeat it altogether.  As such, the Arbitrator's conduct was not in bad faith, let alone affirmative misconduct.  *See Simons*, 2022 WL 296636, at *3 (finding no deprivation of a fair trial when the at-issue language was "unambiguous" and "did not require any extrinsic evidence to interpret [it]").

---

[7] Plaintiff does not detail any efforts to request this discovery.  *See generally* Mot.; Rep. Br.

>     2. *The Arbitrator did not exceed her powers or demonstrate a manifest disregard of the law*

Under FAA § 10(a)(4), an arbitrator exceeds their powers "[o]nly if 'the arbitrator acts outside the scope of [their] contractually delegated authority' [and] issue[s] an award that 'simply reflects [their] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract . . . .'" *Oxford*, 569 U.S. at 569. This is a "heavy burden" to prove, because "it is not enough . . . to show that the [arbitrator] committed an error[] or even a serious error." *Id.* (internal quotation marks omitted). If the arbitrator's decision "even arguably constru[es] or appl[ies] the contract[,]" a court must uphold it. *Id.* (internal quotations omitted); *see also Teamsters Local 97 v. Temco Service Industries, Inc.*, 2014 WL 2800816, at *2 (D.N.J. June 19, 2014) (emphasis in original) (internal quotation marks omitted) ("[W]here it is *possible* that the arbitrator could have been interpreting the contract, [their] failure to apply correct contract principles is irrelevant."). Thus, "the sole question is whether the arbitrator (even arguably) interpreted the parties' contract, not whether [the arbitrator] got its meaning right or wrong." *Oxford*, 569 U.S. at 569; *see also Ross Dress for Less Inc. v. VIWP, L.P.*, 750 Fed. App'x 141, 144 (3d Cir. 2018) ("Exceeding one's powers . . . is not synonymous with making a mistake.").

An arbitration award can also be vacated under FAA § 10(a)(4) if the arbitrator's decision "evidence[s] a manifest disregard for the law rather than [merely] an erroneous interpretation of the law." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (internal quotations omitted).[8] This "requires more than legal error. Rather, the arbitrator['s] decision must fly in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a

---

[8] There is a circuit split regarding whether an arbitrator's manifest disregard of the law remains a valid basis for vacating arbitration. *See, e.g.*, *Ross Dress for Less, Inc.*, 750 Fed. App'x at 146 n.1. Because the outcome remains the same, the Court will proceed as if it is still a valid basis.

clearly governing legal principle but decides to ignore or pay no attention to it." *Simons*, 2022 WL 296636, at *4 (internal quotations omitted).

Plaintiff does not satisfy FAA § 10(a)(4)'s "heavy burden" to prove the Arbitrator "act[ed] outside the scope of h[er] contractually delegated authority . . . ." *Oxford*, 569 U.S. at 569 (internal quotation marks omitted).

Plaintiff concedes that the Arbitrator "cited the relevant case law," which established the "least sophisticated consumer" standard. Mot. 19. However, Plaintiff then argues that the arbitrator "failed to view the [Defendants'] letter under the correct standard." *Id.* Essentially, Plaintiff's narrative is that the Arbitrator acknowledged the correct standard but disregarded it. *See id.* ("[I]nstead of using the . . . 'least sophisticated consumer' standard, the Arbitrator made three distinctions as to why the facts in this case differentiate from the facts in the precedent cases.").

But the Arbitrator applied the correct standard. And, in doing so, the Arbitrator distinguished prior precedent to explain why the *outcome*—not the applicable *standard*—here was different. *See* Arbitrator Op. 7-9. Though Plaintiff may disagree, the question is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [the arbitrator] got its meaning right or wrong." *Oxford*, 569 U.S. at 569. As Plaintiff acknowledges, the Arbitrator interpreted whether the collection letter's use of the word "may" would deceive the least sophisticated consumer. *See* Arbitrator Op. 8; Mot. 19 (challenging the Arbitrator's interpretation that the word "may" is less threatening than "could"). The Court's inquiry ends there. *See Oxford*, 569 U.S. at 569. Any alleged errors in analysis are inconsequential. *See Ross Dress for Less Inc.*, 750 Fed. App'x at 144 ("Exceeding one's powers . . . is not synonymous with making a mistake."); *Teamsters Local 97*, 2014 WL 2800816, at *2 ("[W]here it is possible that the arbitrator could

have been interpreting the contract, [their] failure to apply correct contract principles is irrelevant.").

Nor do any alleged errors demonstrate a manifest disregard for the law. Plaintiff argues that when the Arbitrator discussed the least sophisticated consumer standard, she wrongfully mentioned the smoking-gun evidence Plaintiff would need to provide and whether the collection letter could have deceived Plaintiff. Mot. 20. However, the arbitrator's analysis of the least sophisticated consumer standard makes clear she did not "ignore or pay no attention" to the standard. *Simons*, 2022 WL 296636, at *4. Given the heavy burden Plaintiff faces, even if the arbitrator erred in mentioning those considerations, her detailed analysis of the applicable standard does not "fly in the face of clearly established legal precedent . . . ." *Id.* (finding no manifest disregard of the applicable standard where the arbitrator "cited the . . . standard . . . and structured her decision to mirror the arguments" in the briefs).

### 3. The Arbitrator showed no evident partiality to Defendants

Under FAA § 10(a)(2), the party challenging the arbitration award "'must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration.'" *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 252 (3d Cir. 2013) (quoting *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994)). "[T]he alleged partiality must be direct, definite, and capable of demonstration." *Id.* (internal quotations omitted). The challenging party "must establish specific facts that indicate improper motives on the part of an arbitrator." *Id.* (internal quotations omitted).

Plaintiff argues the Arbitrator showed "evident partiality" because the above-discussed decisions "unilaterally benefit the Defendants" and thus "[a]ny reasonable person would conclude the Arbitrator was partial to the Defendants." Mot. 22. But Plaintiff points to no "specific facts .

13

. . indicat[ing] improper motives on the part of [the] [A]rbitrator." *Freeman*, 709 F.3d at 252. Because Plaintiff has not "capabl[y] demonstrate[ed]" any direct or definite partiality, the award will not be vacated. *Id.*

### III. CONCLUSION

For the reasons stated herein, Plaintiff's motion to vacate the arbitration award will be **DENIED**. An appropriate Order accompanies this Opinion.

Dated: May 31, 2023

                                                                        _____
                                                                        Evelyn Padin, U.S.D.J.

14